# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. THOMAS AND ST. JOHN

|  |  |  |
|---|---|---|
| MARTIN DUKES AND JULIE DUKES, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 3:18-cv-0064 |
| | ) | |
| FAY SERVICING, LLC., ABC CO. A FICTITIOUS COMPANY, AND XYZ CORPORATION, INC., | ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

**APPEARANCES:**

Robert L. King, Esq.
King & King Law, P.C.
St. Thomas, U.S. Virgin Islands
    *For Plaintiffs Martin Dukes and Julie Dukes,*

Matthew Reinhardt, Esq.
Quintairos, Prieto, Wood & Boyer, P.A
St. Thomas, U.S. Virgin Islands
    *For Defendant Fay Servicing, LLC.*

## MEMORANDUM OPINION

**MOLLOY, Chief Judge.**

    **BEFORE THE COURT** is Defendant Fay Servicing, LLC's ("Fay") Motion to Dismiss for Failure to State a Claim or, in the alternative Motion for Summary Judgment, filed on April 18, 2022. (ECF No. 58.) Plaintiffs filed a response on May 20, 2022, ECF No. 65, to which Fay filed a reply on June 1, 2022 (ECF No. 67.) For the reasons stated below, the Court will grant, in part, and deny in part, the motion to dismiss. Furthermore, the Court will deny the motion for summary judgment without prejudice.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On September 2, 2018, Plaintiffs Martin Dukes and Julie Dukes ("the Dukes") filed a Complaint in this matter against Ditech Financial, LLC ("Ditech"),[1] Fay, and two fictitious companies—XYZ Corporation, Inc., and ABC Co. A fictious Company (all collectively known as "Defendants"). (ECF No. 1.) The Complaint stems from a dispute between the parties over whether the defendant, Fay, provided or promised to provide a lender-placed hazard insurance policy on the plaintiffs' property, and whether that policy or promise was in existence in September of 2017. The pertinent details are as follows.

On October 26, 2004, the Dukes received a loan from Flagstar Bank in the principal amount of $640,725 to purchase the premises described as: Parcel Nos. 1L and 1M Estate Wintberg No. 3 Great Northside Quarter St. Thomas, Virgin Islands as shown on PWD No. A9-5-T56. (ECF No. 63 at 1-2.) In exchange, the Dukes provided Flagstar Bank a promissory note secured by a first priority mortgage (hereinafter the "Mortgage") which was properly recorded on October 26, 2004. *Id.* at 2. Flagstar subsequently assigned the Mortgage to Green Tree Servicing, LLC on November 19, 2014. *Id.* Following the assignment, Green Tree Servicing, LLC merged with Ditech on August 13, 2015, after which Ditech remained the surviving entity. *Id.* at 3. Once Ditech took over the Dukes' mortgage, Defendant Fay notified the Dukes in writing that Fay would be servicing the loan on behalf of Ditech effective December 1, 2016. *Id.* Fay serviced the Duke's Mortgage until May 31, 2018. *Id.*

According to Fay, the Dukes alone were responsible for maintaining hazard and windstorm insurance on the mortgaged property. *See* ECF No. 59-1. To demonstrate that Fay did not have a duty or obligation to provide hazard insurance on the mortgaged property at issue, Fay relies on the express terms of the Mortgage, which provides, that in the event "Plaintiffs fail to maintain hazard insurance on the mortgaged property, the Lender 'may obtain insurance coverage' . . . [but] 'Lender is under no obligation to purchase any particular type or amount of coverage.'" *See* ECF Nos. 59-1 at 3 and 59-3 at 4.[2] The Mortgage goes on to

---

[1] Ditech Financial, LLC was initially pleaded as a defendant in this case but was dismissed by stipulation on September 10, 2021. ECF No. 24.

[2] According to Defendant's Exhibit B, ECF No. 59-3 (the "Mortgage"), the "Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included

*Dukes et al v. Fay Servicing, LLC. et al.*
Case No. 3:18-cv-0064
Memorandum Opinion
Page 3 of 14

state, in pertinent part, that "if Borrower fails to maintain any of the coverages described [in the mortgage], Lender may obtain insurance coverage, at Lender's option and Borrower's expense." *See* ECF No. 59-3 at 4. Relying on the foregoing provisions in the Mortgage, Fay argues that it maintained the option to obtain lender-based hazard insurance on the mortgaged property if the borrowers failed to obtain or maintain their hazard insurance, but Fay could choose not to provide such insurance at its own discretion. *See* ECF No. 59.

Fay also alleges that as of January 18, 2017, there was no lender-placed hazard insurance policy on the property, and any hazard insurance the Dukes previously obtained on the mortgaged property had lapsed. *See* ECF Nos. 59 at 9, 59-8, 59-9. Fay also maintains that from December 1, 2016, to October 18, 2018, Fay never acquired lender-placed insurance, nor did Fay charge the Dukes for any lender-placed hazard insurance during the period Fay serviced the mortgage. *See* ECF Nos. 59 at 9, 59-1, 59-11. Additionally, on January 18, 2017, and February 2, 2017, Fay allegedly provided notice to the Dukes of the lack of hazard insurance on the mortgage property in identical letters which stated

> as of 12/01/2016, your property is no longer covered by any lender-placed hazard insurance… we will no longer be monitoring or paying any lender-placed hazard insurance premiums on your behalf. If you wish to insure the equity in your property, if any, (and/or contents and liability, as appropriate) against these risks, you must obtain and maintain your elected coverage on your own. (ECF Nos. 59-8 & 59-9.)

The Dukes do not dispute that there was no borrower-placed hazard insurance policy on the mortgaged property, nor do they dispute the express terms of the October 24, 2006 mortgage. Instead, the Dukes allege that on September 5, 2017, and September 19, 2017, the mortgaged property suffered significant damage from Hurricanes Irma and Maria. *See* ECF No. 46 at 3-4. Then "on or about January 18, 2018, Fay entered into a mortgage modification agreement with Plaintiffs, whereby the loan balance on the mortgage was increased [in part] to include the costs allegedly incurred by Defendants, Fay and Ditech, to place forced placed insurance on the Plaintiffs' properties." (ECF Nos. 46 & 63.) As a part the agreement, the

---

within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance…. If Borrower fails to maintain any of the coverage described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.

insurance premiums would be included in the Mortgage and the Dukes would simply make a larger mortgage payment each month. *See id.* After the alleged mortgage modification agreement was entered into by the parties, the Dukes assert that they attempted to make a hurricane damage claim on the mortgaged property and it was only then that Fay informed the Dukes, for the first time, that no such policy existed. *See* ECF No. 46 at 4*.* Thus, as a result of Fay not obtaining force placed insurance as allegedly agreed to in the mortgage modification agreement, the Dukes assert that the mortgaged property suffered damages in excess of $300,000.00 that have not been reimbursed. (ECF No. 46 at 5.)

On September 2, 2018, the Dukes filed the original Complaint against Defendants. (ECF No. 1.) The Court dismissed the original Complaint without prejudice for lack of subject matter jurisdiction. (ECF No. 45.) The Dukes then proceeded to file the Amended Complaint on March 28, 2022. (ECF No. 46.) The Dukes allege three causes of action in their Amended Complaint: Count I alleges a breach of contract and a breach of the covenant of good faith; Count II is an action for fraud against Ditech[3] and Fay for allegedly charging the Dukes for reimbursement when no insurance was ever purchased; and Count III claims Fay, Ditech,[4] XYZ, and ABC engaged in a civil conspiracy. *See* ECF No. 46.

After the Dukes filed their Amended Complaint, Fay made the instant motion to dismiss for failure to state a claim, or in the alternative, motion for summary judgment. (ECF No. 58.) On May 20, 2022, the Dukes filed a response, ECF No. 65, to which Fay subsequently replied to on June 1, 2022. (ECF No. 67.)

On October 4, 2022, the magistrate judge ordered that all discovery must be completed by December 15, 2022. *See* ECF No. 75. Thus, to date, the parties have not completed discovery.

## II. DISCUSSION

### A.  Motion to Dismiss – Fed. R. Civ. P. 12(b)(6)

A complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss brought pursuant to

---

[3] *See supra* note 1.

[4] *See id.*

Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint "in the light most favorable to the plaintiff." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). The Court must accept as true all the factual allegations contained in the complaint and draw all reasonable inferences in favor of the non-moving party. *Alston v. Parker*, 363 F.3d 229, 233 (3d Cir. 2004). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) *cert. denied*, 562 U.S. 1271 (2011).

The Supreme Court set forth the "plausibility" standard for overcoming a motion to dismiss in *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), and refined this approach in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint which pleads facts "merely consistent with a defendant's liability, … stops short of the line between possibility and plausibility of entitlement of relief." *Id.* (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 557).

To determine the sufficiency of a complaint under the plausibility standard, the Court must take the following three steps:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."
> *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 674, 679).

### 1. Count I—Breach of Contract and Fair Dealing

In this Court's previous Order dismissing the original Complaint, the Court noted that Count I could best be "construed as a mislabeled factual background section," as opposed to a breach of contract claim, and therefore, was best disregarded. (ECF No. 45.) The Dukes attempted to resolve the deficiency and articulate a more definite cause of action in their Amended Complaint by asserting that Fay's conduct constituted a breach of contract and specifically a "breach of the covenants of good faith and fair dealing" that amounted to "$300,000" in damages to the mortgaged property. (ECF No. 46.) Despite these supplemental statements, Count I of the Amended Complaint fails to state a claim for which relief can be granted.

As noted by the Third Circuit in *Santiago*, when the Court is reviewing a motion to dismiss, it must first "tak[e] note of the elements a plaintiff must plead to state a claim." 629 F.3d at 130. It is now sufficiently evident that the Dukes are first asserting a breach of contract claim. Therefore, under Virgin Islands law, the Dukes must establish "'[1] that a contract existed, [2] that there was a duty created by the contract, [3] that such duty was breached, and [4] that [they] suffered damages as a result.'" *Merchants Commercial Bank v. Oceanside Village, Inc.*, 64 V.I. 3, 14 (Super. Ct. 2015) (quoting *Chapman v. Cornwall*, 58 V.I. 431, 437 (2013)).[5] With the elements of a breach of contract claim established, the Court must determine whether the well-pleaded factual allegations [in Count I] "plausibly give rise to an entitlement of relief." *Santiago*, 629 F.3d at 130. The Court finds that they do not. Although the Dukes allegations plausibly demonstrate: (1) the existence of an agreement between the parties, (2) that Fay assumed a duty, (3) and that Fay breached that duty, the pleadings nevertheless fail to demonstrate that the damages incurred were a result of Fay's breach of contract.

As asserted by the Plaintiffs, Fay's duty to provide forced placed insurance coverage and a copy of the forced placed policy was not created until Fay obtained "receipt of the

---

[5] Although the Superior Court in *Merchants Commercial Bank* ultimately adopted the elements for a breach of contract claim set out in *Chapman*, 58 V.I. at 437, the Superior Court could not rely on *Chapman* for precedential value because *Chapman* and its predecessors did not conduct the required *Banks* analysis set out in *Banks v. International Leasing Corp.*, 55 V.I. 967 (2011) for determining issues of Virgin Island Common Law. *See Merchants Commercial Bank*, 64 V.I. at 13-14.

consideration from Plaintiffs." (ECF No. 65 at 5.) The Plaintiffs allege that Hurricanes Maria and Irma damaged the mortgaged property in September 2017. (ECF No. 46 at 3-4.) The alleged mortgage modification, however, was not agreed to until January 18, 2018. (ECF Nos. 46, 63.) Therefore, assuming arguendo that there was a valid contract imposed on Fay in January 2018, the duty to provide coverage did not exist until after the catastrophic hurricanes struck the Virgin Islands in September 2017 that had already damaged the mortgaged property. As such, any damage to the property occurred prior to the creation of Fay's contractual duty, and thus, those damages cannot be a basis for relief under the Plaintiffs' breach of contract claim.

The Dukes assert no other damages beyond the hurricane damage to the property prior to or after the creation of the alleged mortgage modification. (ECF No. 46.) Therefore, the Plaintiffs have no basis for relief since they have asserted no plausible damages that resulted from Fay's alleged breach of the January 18, 2018 mortgage modification. The claim that Fay breached the covenant of good faith and fair dealing fails for the same reason.

To prevail under a breach of good faith claim in contract under Virgin Islands law,[6] the plaintiff must show that "(1) a valid contract exists between the parties, and (2) acts committed by the [defendant] amount to fraud or deceit or an unreasonable contravention of the parties' reasonable expectations under the contract;" and (3) that "damages suffered as a result." *Arvidson v. Buchar*, 71 V.I. 277, 336 (Super. Ct. 2019); *Merchants Commercial Bank v. VI F.F.O., LLC*, No. ST-18-CV-183, 2018 WL 4586346, at *3 (V.I. Super. Ct. Sept. 17, 2018) (noting that damages are a necessary component of a party's claim of breach of the covenant of good faith and fair dealing). While a contract must exist, no special language is required as it is well established under Virgin Islands' law that the duty of good faith implicitly arises from the creation of a contract. *See Chapman*, 58 V.I. at 441 ("every contract

---

[6] While this Court has recognized that an alleged breach of the covenant of good faith and fair dealing against an insurance company may constitute a cause of action in tort wholly independent from a party's breach of contract claim, the Dukes do not appear to be making such an argument here. *See Mendez v. Coast Systems Development, Inc.*, No. 2005-0165, 2008 WL 2149373, at *5-7 (D.V.I. May 20, 2008). Plaintiffs make no independent arguments regarding Fay's breach of good faith separate from their contract claim and expressly state in their response to Fay's motion to dismiss that the breach of the covenant of good faith and fair dealing is included within their breach of contract claim. *See* ECF Nos. 46 & 65. As such, the Court will treat the breach of good faith and fair dealing as a breach of contract claim and limit the claim to contract damages.

imposes upon every party a duty of good faith and fair dealing in its performance and enforcement."); *accord Merchants Commercial Bank*, 64 V.I. at 34-35. Thus, the duty of good faith only arose, in this case upon the creation of the alleged contact. Therefore, even if the Dukes sufficiently plead the other elements of the breach of good faith claim, no plausible claim for damages exist since the alleged damages occurred in 2017 before Fay assumed a duty to act in good faith under the contract created in 2018.

Consequently, the Plaintiffs have failed to allege sufficient allegations that would entitle them to relief for a breach of contract claim or breach of good faith. Accordingly, the Court will grant Fay's motion to dismiss Count I of the Amended Complaint.

### 2. Count II—Fraud

The second cause of action in the Amended Complaint alleges that Fay intended to defraud and did defraud the Dukes by allegedly having the Dukes "pay for reimbursement of forced placed insurance premiums when no such insurance was purchased." (ECF No. 46.) Fay argues that the Dukes' fraud claim must be dismissed under Federal Rule 9(b)'s heightened pleading requirement for fraud.

Unlike other causes of action, in order to state a viable fraud claim, the plaintiff must plead: (1) a specific false representation or omission of material fact; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) that the plaintiff acted upon it to his damages." *In re Rockefeller Ctr. Props., Inc.*, 311 F.3d 198, 215 (3d Cir. 2002). While Rule 9(b) does not require "plaintiffs to plead issues that may have been concealed by the defendants," *Rolo v. City Inv. Co. Liquidating Trust*, 155 F.3d 644, 658 (3d Cir. 1998) (abrogated on other grounds), "it does require 'that plaintiffs support their allegations of fraud with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is the who, what, when, where, and how of the events at issue.'" *Fin. Tr. Co. v. City Bank*, *N.A.*, 351 F. Supp. 2d 329, 331 (D.V.I. 2004) (quoting *In re Rockefeller Ctr. Props., Inc.*, 311 F.3d at 217 (internal quotations and citations omitted)). However, Rule 9(b) does not require specification of time, place, and nature of a party's omission or failure to act. *See City Bank*, *N.A.*, 351 F. Supp. 2d at 332 (noting that "'[c]onduct which never

occurred cannot be described with greater particularity other than to state that it did not occur.'") (quoting *Cottman Transmission Sys. Inc. v. Dubinsky,* 95 F.R.D. 351, 353 (E.D. Pa. 1982).

The Dukes have met the heightened pleadings standard for fraud claims under Rule 9(b), and thus, can overcome Fay's motion to dismiss as to this claim. The Amended Complaint asserts that Fay made a specific false representation—That on January 18, 2018, Fay increased the Dukes mortgage payments as a means of reimbursement for lender placed insurance premiums despite no such insurance every being purchased. *See* ECF No. 46 at 5. By asserting that Fay continued to accept the increased mortgage payments without buying the lender-placed insurance, the Plaintiffs make a sufficient pleading of knowledge. Additionally, it is evident from the Amended Complaint that the Dukes were unaware of the alleged misrepresentation regarding the lender placed insurance policy as they would not have paid additional premiums if they had known Fay had not upheld its end of the bargain. It is equally evident that if, assuming arguendo, Fay did in fact falsely represent the existence of a hazard insurance policy, they intended the Dukes to act on this misrepresentation to their detriment, and the Dukes did in fact suffer damages as a result of relying on the misrepresentation. By making a false representation about the existence of an insurance policy, Fay would receive additional compensation from the Dukes at no cost. Simultaneously, the Dukes would be detrimentally harmed by paying for insurance coverage they never actually received. Although, there are several particulars missing from the pleadings, the Third Circuit has determined that "courts should apply Rule 9(b) with some flexibility" and therefore, the Court will not demand that the Plaintiffs describe the internal workings of the Defendant's alleged scheme in order to overcome the motion to dismiss. *City Bank*, *N.A.*, 351 F. Supp. 2d at 331.

### 3. Count III—Civil Conspiracy

To establish a prima facie case for a civil conspiracy, the plaintiff must show "[1] an agreement or combination [2] to perform a wrongful act, or lawful act by unlawful means, [3] that results in damage to the plaintiff*." Isaac v. Crichlow*, 63 V.I. 38, 64 (Super. Ct. 2015) (conducting a *Banks* analysis adopting the Second Restatements of Torts' definition of civil

conspiracy); *see also Gov't Guarantee Fund of Republic of Finland v. Hyatt Corp.*, 955 F. Supp. 441, 456 (D.V.I. 1997) (adopting the same standard). At its core, "the essence of a civil conspiracy is two or more persons agreeing in some form and acting on a desire to accomplish an unlawful end." *Hyatt Corp.*, 955 F. Supp. at 457. As noted by the Court in *Isaac v. Crinchlow*, "[t]he existence of a conspiracy can be inferred 'from evidence of related facts and circumstances from which it appears as a reasonable and logical inference, that the activities of the participants…could not have been carried on except as the result of a preconceived scheme or common understanding.'" 63 V.I. at *65 (quoting *United States v. Ellis*, 595 F.3d 154, 160 (3d Cir. 1979)).

      The Dukes have established a viable claim of civil conspiracy sufficient to overcome Fay's motion dismiss. Although the Dukes' claim of conspiracy is somewhat speculative, as it does not even name all the members of the conspiracy, their claim nevertheless asserts specific facts sufficient to satisfy the lower pleadings standard at the motion to dismiss stage. (ECF No. 46 at 2) (noting that XYZ and ABC are fictitious names for real entities). The Dukes essentially allege that in return for Fay/Ditech purchasing hazard insurance exclusively from XYZ and ABC, XYZ and ABC would give the former kickbacks as well as deny the existence of a hazard insurance policy should the Dukes ever bring an insurance claim. (ECF No. 46 at 5-6.) This allegation clearly satisfies the agreement element and also identifies the specific wrongful acts that the defendants agreed to engage in during the course of the conspiracy— namely fraudulently denying the existence of an insurance policy to avoid paying out claims. The Dukes also assert that as a result of Defendants' alleged conspiracy, they "suffered pecuniary loss and damage, mental anguish, loss of sleep and rest, and pain of the mind and body." *Id.* at 6. Therefore, the damage element is also satisfied as the Dukes still could have incurred damages from paying premiums for non-existent or inadequate coverage even after the hurricane damage occurred. Since the elements for civil conspiracy have been adequately plead and supported by specific factual allegations, Fays motion to dismiss for failure to state a claim as to the civil conspiracy claim is denied.

### B. Summary Judgment – Fed. R. Civ. P. 56

In addition to the motion to dismiss, Fay also makes an in the alternative argument for summary judgment as to all three counts in the Dukes' Amended Complaint. Fay relies on the theory that Plaintiffs were never charged for lender-placed insurance premiums, and pursuant to the terms of the mortgage, Fay had no duty to obtain windstorm insurance or any other type of insurance for the property. (ECF No. 59.)

A party may move for summary judgment at any time until thirty days after the close of all discovery, and the court shall grant the same if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears "the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.* 477 U.S. at 323.

Alternatively, the moving party may satisfy their initial burden by demonstrating that "there is an absence of evidence to support the nonmoving party's case." *Id.* at 325; *see* Fed. R. Civ. P. 56(c)(1)(B) ("a party asserting that a fact cannot be or is genuinely disputed must support the assertion by showing…that an adverse party cannot produce admissible evidence to support the fact.").

If the movant sufficiently satisfies their initial obligation, the burden shifts to "the nonmovant to go beyond the pleadings and by [their] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Daubert v. NRA Group, LLC*, 861 F.3d 382, 391 (3d Cir. 2017) (quoting *Celotex*, 477 U.S. at 324) (internal quotation marks omitted). "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), *except the mere pleadings themselves*, and it is from this list that one would normally expect the nonmoving party" to demonstrate a genuine dispute of material fact. *Celotex*, 477 U.S. at 324 (emphasis added). Parties must provide actual admissible

evidence, "[b]are assertions, conclusory allegations, or suspicions will not suffice." *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 288-89 (3d Cir. 2018) (internal citations omitted).

Once the burden has shifted to the non-moving party, the nonmovant must provide evidence sufficient to establish a genuine issue of fact. A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it will "affect the outcome of the suit under the governing law." *Id.* However, when deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence. Instead, all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n.2 (3d Cir. 1983); *see Daubert*, 861 F.3d at 388-89 (citing *Steele v. Cicchi*, 855 F.3d 494, 500 (3d Cir. 2017). Thus, when considering a motion for summary judgment, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. The Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Notwithstanding the above, before a motion for summary judgment is granted, "a Court is obligated to give a party opposing summary judgment an adequate opportunity to obtain discovery." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 257 (3d Cir. 2007) (quoting *Dowling v. City of Philadelphia*, 855 F.2d 136, 139 (3d Cir. 1988)). "If discovery is incomplete, a district court is rarely justified in granting summary judgment, unless the discovery request pertains to facts that are not material to the moving party's entitlement to judgment as a matter of law." *Shelton v. Bledsoe*, 775 F.3d 554, 568 (3d Cir. 2015). Providing sufficient time for discovery is "necessary because, by its very nature, the summary judgment process presupposes the existence of an adequate record." *Doe*, 480 F.3d at 257. Thus, if discovery is incomplete as to any issue material to the pending summary judgment motion, the court may properly deny the motion. *See id.*

*Dukes et al v. Fay Servicing, LLC. et al.*
Case No. 3:18-cv-0064
Memorandum Opinion
Page 13 of 14

In this case, the Dukes allege that at the time of their response opposing the motion for summary judgment, discovery had not yet begun. (ECF No. 65 at 10-11.) Additionally, on three separate occasions, the magistrate judge has found it necessary to extend the discovery deadline to allow the parties to complete discovery.[7] Since the magistrate judge's original extension on April 11, 2022, the parties have been continually engaged in the discovery process.[8] Due to the on-going discovery, on October 4, 2022, the magistrate judge extended the discovery deadline until December 15, 2022. (ECF No. 75.)

In light of the non-movant's request for time to conduct discovery, and the magistrate judge's previous orders determining an extension of the discovery deadline was necessary, the Court finds that rendering a decision on the merits of Fay's motion for summary judgment prior to close of discovery would be inappropriate.[9] To rule on the merits of a motion for summary judgment would be unduly prejudicial to the non-moving party as it would deny the Dukes "an opportunity to marshal facts in aid of their argument." *Doe*, 480 F.3d at 259. As such, the Court will deny Fay's motion for summary judgment without prejudice to permit the parties an opportunity to refile and submit supplemental briefing following the close of discovery.

---

[7] On April 11, 2022, the magistrate just extended discovery until September 15, 2022. (ECF No. 57.) On July 12, 2022, the magistrate judge extended written discovery through July 18, 2022. (ECF No. 70.) Then on October 4, 2022, the magistrate judge extended discovery again through December 15, 2022. (ECF No. 75.)

[8] ECF Nos. 60, 61, 71, 76, and 77 all indicate that active discovery has been taking place between the parties since Fay moved for summary judgment.

[9] While Fay notes in its reply to the Plaintiff's opposition that the Plaintiff did not submit an affidavit in compliance with 56(d) (formerly known as 56(f)), the Third Circuit has said that "although we again emphasize the desirability of full compliance with Rule 56(f), failure to support a Rule 56(f) motion by affidavit is not automatically fatal to its consideration." *St. Surin v. Virgin Islands Daily News, Inc.*, 21 F.3d 1309, 1314 (3d Cir. 1994); *see also Miller v. Beneficial Management Corp.*, F.2d 834, 846 (3d Cir. 1992) (excusing failure to file Rule 56(f) affidavit where non-moving party argued in briefs that consideration of summary judgment motion should be postponed). Thus, a party moving to delay consideration of summary judgment may still successfully oppose summary judgment without submitting an affidavit as long as the "party inform[s] the district court why delay is needed." *St. Surin*, 21 F. 3d at 1314. Additionally, although the Plaintiffs do not expressly state what specific facts they intend to uncover in discovery, the fact that the magistrates judge found additional time was needed to conduct discovery weighs strongly in favor of this court declining to rule on summary judgment until the close of discovery. *See In re Fine Antitrust Litig.*, 685 F.2d 810, 817 (3d Cir. 1982) ("'[w]e will not interfere with a trial court's control of its docket 'except upon the clearest showing that the procedures have resulted in actual and substantial prejudice to the complaining litigant.'" (quoting *Eli Lilly & Co. v. Generix Drug Sales, Inc.*, 460 F.2d 1096, 1105 (5th Cir. 1972)).

### III. CONCLUSION

For the reasons stated above, the Court will grant Fay's motion to dismiss only as to Count I of the Amended Complaint. Fay's motion to dismiss as to Count II and III are denied. The Court will not permit the Dukes leave to cure the pleading deficiencies in Count I of the Amended Complaint as any such amendment would be futile.[10] *See Lutz v. Philips Elec. North Am. Corp.*, 347 F.3d 773, 777 (3d Cir. 2009) ("Although leave to amend a complaint under Rule 15(a) should be liberally granted, we have held that such leave should not be permitted where an amendment to the complaint would be futile.") (citing *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1278 (3d Cir. 1994)).

Additionally, the Court will deny Fay's motion for summary judgment without prejudice to allow Fay an opportunity to refile the motion following the conclusion of discovery.

An appropriate Order follows.

**Dated:** November 10, 2022                    */s/ Robert A. Molloy*
                                                 **ROBERT A. MOLLOY**
                                                 **Chief Judge**

---

[10] The Court finds that an amendment seeking to cure the pleading deficiencies in Count I would be futile because any such amendment would fundamentally change the nature of the claim. There is no amendment wherein a breach of contract would be plausible that would relate back to the dates of the hurricanes in 2017 given that the alleged contract was created in 2018. *See Foman v. Davis*. 371 U.S. 178, 182 (1962) (stating that a plaintiff may only be permitted to amend a claim "if the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief").